**FILED**

**DECEMBER 27, 2007**
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

**07 C 7251**

| | | |
|---|---|---|
| Transportation Solutions Group, LLC | ) | |
|     an Illinois limited liability company | ) | No. _____ |
| 400 N. Noble Street, Suite 210 | ) | |
| Chicago, Illinois 60622 | ) | |
|     plaintiff | ) | **JUDGE GOTTSCHALL** |
| v. | ) | **MAGISTRATE JUDGE NOLAN** |
| PAX Trucking, Inc., a foreign corporation | ) | |
| 4548 Bentley Trace Lane North | ) | |
| Jacksonville, Florida 32257 | ) | |
|     defendant | ) | |

COMPLAINT OF TRANSPORTATION SOLUTIONS GROUP, LLC,
<u>AGAINST PAX TRUCKING, INC.</u>

Transportation Solutions Group, LLC. (referred to as "TSG"), directly and as subrogee of

Phoenix Brands, Menlo Worldwide Logistics, and Freight Exchange of North America,

complains against PAX Trucking, Inc. (referred to as "PAX"), as follows.

JURISDICTION AND VENUE

1. This Court has jurisdiction pursuant to 28 U.S.C. §1337 by reason that this is an action

brought pursuant to 49 U.S.C. §14706 (the Carmack Amendment) and the amount in controversy

exceeds $10,000.00.

2. This Court also has supplemental jurisdiction pursuant to 28 U.S.C. §1367.

3. Venue is proper in this Court pursuant to 28 U.S.C. §1391 in that a substantial part of

the events and/or omissions giving rise to the claim occurred within the Northern District of

Illinois, given that TSG and PAX entered into a Contract Carrier Agreement (referred to as

"AGREEMENT"), and that the AGREEMENT between TSG and PAX agreed that "all disputes

arising under [the] Contract may be submitted to the jurisdiction of the State or Federal Courts

1

within the States or Districts of Illinois."

FACTS COMMON TO ALL COUNTS

4. At all times relevant herein, defendant PAX was an interstate motor carrier licensed as an interstate motor carrier by the Federal Motor Carrier Safety Administration in No. MC-582431.

5. At all times relevant, defendant PAX was a Florida corporation that transacted business in Illinois as an interstate carrier.

6. At all times relevant, Phoenix Brands (referred to as "PHOENIX") was a North Carolina entity, with its place of business in Charlotte, North Carolina.

7. At all times relevant, Menlo Worldwide Logistics (referred to as "MENLO") was a North Carolina entity, with its place of business in Charlotte, North Carolina.

8. At all times relevant, Freight Exchange of North America LLC (referred to as "FREIGHT EXCHANGE") was an Illinois entity, with its place of business in Chicago, Illinois.

9. On or about June 11, 2007, PAX and TSG entered into the AGREEMENT, under which PAX, as an interstate carrier, agreed to provide transportation services, and TSG, as a licensed transportation broker, agreed to provide loads for PAX. A copy of the AGREEMENT is attached as Exhibit 1 of this Complaint.

10. On or about July 12, 2007, PHOENIX and MENLO entered into an agreement pursuant to which MENLO agreed to arrange for the transportation of Phoenix Brands Order Number A6387 (referred to as "THE SHIPMENT"), from Charlotte, North Carolina, to Orlando, Florida. A copy of the bill of lading is attached as Exhibit 2 of this Complaint.

11. On or about July 12, 2007, MENLO and FREIGHT EXCHANGE entered into an

2

agreement pursuant to which FREIGHT EXCHANGE agreed to arrange for the transportation of the SHIPMENT from Charlotte, North Carolina, to Orlando, Florida.

12. On or about July 12, 2007, FREIGHT EXCHANGE and TSG entered into an agreement pursuant to which TSG agreed to arrange for the transportation of the SHIPMENT from Charlotte, North Carolina, to Orlando, Florida.

13. On or about June 12, 2007, PAX picked up the SHIPMENT at PHOENIX's place of business in Charlotte, North Carolina, for transportation to Orlando, Florida.

14. PAX accepted the shipment in good order and condition. A copy of the bill of lading is attached as Exhibit 3 of this complaint.

15. The SHIPMENT was stolen in transit on or about June 13, 2007, while in the care and custody of PAX. A copy of a Stolen Vehicle Report is attached as Exhibit 2 of this complaint.

16. As the result of the theft of the SHIPMENT, PHOENIX sustained a loss in the amount of $25,297.60. A copy of a claim form is attached as Exhibit 4 of this complaint.

17. Because PAX failed to delivered the subject goods to the consignee in the same good order and condition as when PAX received the subject goods, PAX is liable to PHOENIX pursuant to the Carmack Amendment.

18. As subrogee of PHOENIX, TSG has sustained a loss in the amount of $25,297.60. A copy of the Claim Form submitted by TSG to PAX is attached as Exhibit 5 of this complaint.

COUNT I
CARMACK AMENDMENT

19. Plaintiff realleges and incorporates paragraphs 1-18 of the Complaint as paragraph 18 of the complaint.

20. As an interstate carrier transporting subject goods, PAX is liable for the full actual loss or damage to the goods in the shipment.

21. At all times relevant to the complaint, there was in effect 49 U.S.C. §14706 (the Carmack Amendment) which provides in pertinent part as follows:

(a) General liability:

(1) Motor Carriers and freight forwarders. - A carrier providing transportation or service subject to jurisdiction under sub-chapter I or III of chapter 135 shall issue a receipt or bill of lading for property it receives for transportation under this part. That carrier and any other carrier that delivers the property and is providing transportation or service subject to jurisdiction under subchapter I or III of chapter 135 or chapter 105 are liable to the person entitled to recover under the receipt or bill of lading. The liability imposed under this paragraph is for the actual loss or injury to the property caused by (A) the receiving carrier, (B) the delivering carrier, or (C) another carrier over whose line or route the property is transported in the United States or from a place in the United States to a place in an adjacent foreign country when transported under a through bill of lading and, except in the case of a freight forwarder, applies to property reconsigned or diverted under a tariff under section 13702. Failure to issue a receipt or bill of lading does not affect the liability of a carrier.

22. PAX was the carrier of the SHIPMENT.

23. The loss or damage of the SHIPMENT occurred while PAX was transporting the subject goods and while the subject goods were in the care, custody and/or control of PAX as the carrier.

24. Because PAX failed to deliver the subject goods to the consignee in the same good order and condition as when PAX received the subject goods, PAX is liable to TSG pursuant to the Carmack Amendment. Missouri P.R. Co. v. Elmore & Stahl, 377 U.S. 134 (1964).

THEREFORE, plaintiff Transportation Solutions Group, LLC prays for judgment against defendant PAX Trucking, Inc., as follows:

(a) an award of $25,297.60 representing the claim for loss or damage paid by TSG;

(b) for prejudgment interest;

(c) for all costs allowable by law and;

(d) for such further relief as this Court deems appropriate.

4

COUNT II
BREACH OF CONTRACT

25. TSG repeats and realleges each and every allegation contained in paragraphs 1-18 of its complaint, as paragraph 25 of its complaint.

26. On or about June 11, 2007, PAX and TSG entered into the AGREEMENT, under which PAX, as an interstate carrier, agreed to provide transportation services, and TSG, as a licensed transportation broker, agreed to provide loads for PAX. A copy of the AGREEMENT is attached as Exhibit 1.

27. Section 7 of the AGREEMENT between TSG and PAX states:

Carrier hereby assumes all liability for cargo loss and damage while such commodities are in Carrier's custody or control, except for loss, damage, injury or delay to the commodities caused by act of God, public enemy, authority of law, act or default of the shipper or owner or for natural shrinkage; and Carrier has the burden of proving that cargo loss, damage, injury or delay was caused by one of the above exceptions.

28. TSG is entitled to recover attorneys' fees and costs of this action pursuant to Section 14.7 of the AGREEMENT, which states:

In the event either party incurs attorney's fees, costs or expenses in enforcing any of the provisions of this Contract, or in exercising any right or remedy arising out of any breach of this Contract by the other party, the prevailing party shall be entitled to an award of attorney's fees, costs and expenses against the defaulting party.

29. On or about June 12, 2007, PAX, pursuant to the terms of the AGREEMENT, agreed to pick up the SHIPMENT from Charlotte, North Carolina, and deliver the SHIPMENT to Orlando, Florida, for the account of and/or for the benefit of cargo interests, including TSG's subrogor.

30. At the time PAX took receipt of the SHIPMENT, the shipment contained 440-19oz containers of liquid lemon detergent and 864-19oz containers of liquid green apple detergent.

31. PAX breached the AGREEMENT by failing to deliver the subject goods in a good order and in an undamaged condition to consignee.

32. TSG, PHOENIX, MENLO, and FREIGHT EXCHANGE duly performed all duties and obligations to be performed by them.

33. TSG has sustained damages in the amount of $25,297.60, which damages have not

been paid to TSG.

THEREFORE, plaintiff Transportation Solutions Group, LLC, requests that this Court enter judgment in plaintiff's favor and against defendant PAX Trucking, INC., as follows:

(a) an award of $25,297.60 representing the claim for loss   or damage paid by TSG to Phoenix Brands Shipment Number A6387;

(b) for prejudgment interest;

(c) an award of attorney's fees, costs and expenses

(d) for all costs allowable by law and;

(e) for such further relief as this Court deems appropriate.

Respectfully submitted,

Todd Berger, Vice President
Transportation Solutions Group, LLC
400 N. Noble Street, Suite 210
Chicago, Illinois  60622

Dated: ___12/11/07___

Of counsel:

Kurt E. Vragel, Jr.
Tami J. Diamond
Tom Koziol
Kurt E. Vragel, Jr., P.C.
Attorneys for Plaintiff
1701 East Lake Avenue, Suite 170
Glenview Illinois  60025-2085
        (847) 657-8551
Kurt E. Vragel, Jr. - Illinois ARDC Number 6181109
Tami J. Diamond - Illinois ARDC Number 6199174
Tom Koziol - Illinois ARDC Number 6293162

Dated: ___12/27/2007___

6

VERIFICATION

State of Illinois      )
                       ) ss.
County of Cook         )

Under penalties as provided by law pursuant to Section 1-109 of the Code of Civil Procedure, the undersigned certifies that the statements set forth in this instrument are true and correct, except as to matters stated to be on information and belief and as to such matters the undersigned certifies he or she believes the same to be true.

Todd Berger, Vice President
Transportation Solutions Group, LLC

7

# EXHIBIT 1

1

## CONTRACT CARRIER AGREEMENT

THIS AGREEMENT (hereinafter referred to as the "Contract") is made and entered into this _JJ_ day of _JUNE_, 20_07_ by and between TRANSPORTATION SOLUTIONS GROUP, LLC, an Illinois limited liability company ("TSG") having an address of 400 N. Noble – Suite 210, Chicago, Illinois 60622 and _PAX TRUCKING, INC_ ("Carrier") (collectively referred to herein as the "Parties") having an address of

## RECITALS

WHEREAS, Carrier is a motor contract carrier of property, authorized by the Federal Highway Administration (FHWA) in Docket No. MC-_582431_ and/or intrastate Permit No. _____, all other applicable State or Federal governmental agencies which may be required to conduct operations and provide service in intrastate, interstate or foreign commerce under continuing contract(s) with TSG; and

WHEREAS, TSG is a motor carrier property broker duly licensed by the FHWA to arrange the transportation of property by authorized motor carriers, which desires from time to time to use the services of Carrier to transport freight for or on behalf of its customers (each a "Customer"), the transportation of which TSG controls; and

WHEREAS, the Parties do hereby enter into this Contract pursuant to 49 U.S.C. 14101 (b) for the purposes of providing and receiving specified services under specified rates and conditions, and under which the parties intend to waive certain rights and remedies permitted to be waived under the Interstate Commerce Act, to the extent that any provisions therein are inconsistent with any of the provisions of this Contract.

NOW, THEREFORE, in consideration of the foregoing premises and the mutual promises contained herein, Carrier and TSG agree as follows:

## SECTION 1

### SERIES OF SHIPMENTS AND TSG'S DISTINCT NEEDS

1.1    Carrier hereby agrees to provide service designed to meet the unique, distinct and continuing transportation service needs of TSG and its Customers, which include but are not limited to the following: providing flexible contract freight rates which may be amended through a simplified notice provision; providing Certificates of Insurance to TSG; Carrier's agreement to issue invoices to and to accept payment from TSG, rather than from the shipper or receiver; participating with TSG to use various means of communications and transmitting information to permit the tracking and tracing of shipments accepted by Carrier; and the occasional granting of other business considerations.

INITIAL

x _RG_

2

## SECTION 2

## CONTRACT RATES

2.1    Compensation shall be paid to Carrier solely and exclusively by TSG on all shipments tendered to Carrier. Carrier's compensation shall be as follows:

1.    Carrier's compensation for any specific shipment or shipments may be agreed to orally between the Parties, and the compensation shall subsequently be confirmed by TSG to Carrier in writing or by electronic means, stating the new contract rate ("the Confirmation"). Unless Carrier objects to the terms and rates of the Confirmation within twenty-four (24) hours after receipt, Carrier shall be presumed to have agreed that the terms are fully and correctly stated. All such Confirmations shall become incorporated as addenda to this Contract, and the Parties agree to retain all such addenda for the period required by applicable law.

2.    The Parties may agree in a separate agreement to a discount of the negotiated confirmed rate, which separate agreement may be attached to and become a part of this Agreement as Appendix B. If the Parties agree to an Appendix B, the discounted payment shall become the negotiated rate without specific separate notation on any Confirmation.

2.2    Carrier agrees that any interstate or intrastate tariffs, released value clauses or rates, or other liability limitations which now or in the future may exist in Carrier's schedules or tariffs shall not apply to transportation provided by Carrier to TSG during the term of this Contract, unless they are expressly stated in this Contract or in a Confirmation addendum.

## SECTION 3

## RESPONSIBILITY FOR PAYMENT OF RATES

3.1    TSG shall be solely and exclusively liable for and responsible to Carrier for its freight charges arising out of this Contract, and TSG's Customers' sole obligation with regard to the payment of transportation charges is to make payment to TSG. Within twenty (20) days after TSG's receipt of a clear delivery receipt (or according to the terms of a separate agreement identified in Appendix B, if any), TSG agrees to pay to Carrier the contract rates and charges even if the Customer does not or cannot pay TSG. In exchange for this guarantee of payment, Carrier: (i) appoints and designates TSG as its agent for the purpose of billing and collection of freight charges from the shippers whose freight TSG tenders to Carrier or arranges for Carrier to transport; (ii) will not communicate in any manner, directly or indirectly, with TSG's Customers, consignors, consignees or any party other than TSG concerning the collection of any charges relating to transportation services accruing in connection with or as a consequence of this Contract; and (iii) waives any right it may otherwise have to proceed or commence any action against any Customer for the collection of any freight bills arising out of transportation services performed by Carrier under this Contract.

3.2    Compensation paid to Carrier under this Contract may be withheld in whole or in part

INITIAL

x _R.G._

3

by TSG to satisfy claims or shortages arising out of this or other Contracts, or to satisfy advances made to, or on behalf of, Carrier, or to satisfy any debt owed by Carrier to TSG.  This offset may occur, at TSG's discretion, only if the claim or debt has not been acknowledged in writing by Carrier within thirty (30) days of presentation or the claim has not either been paid or denied for a valid cause or reason within ninety (90) days of presentation.

3.3     Any claim for overpayment or underpayment of transportation charges in connection with shipments transported under this Contract shall be presented by the party asserting the claim to the other party within sixty (60) days of discovery of the claim by that party, but in no event will any such claim(s) be asserted more than one hundred eighty (180) days after the delivery of the shipment or shipments giving rise to any such claim.

## SECTION 4

## CARRIER'S SERVICE WARRANTIES

4.1     Carrier warrants that: (i) (unless Carrier is an "exempt carrier" solely transporting exempt commodities) it is a motor carrier of property authorized by the FHWA, that all transportation performed by it for or on behalf of TSG and/or TSG's Customers shall be as a contract carrier pursuant to the terms and conditions of this Contract; (ii) all freight tendered to it by TSG pursuant to this Contract shall only be transported by Carrier on, in or with equipment owned by Carrier or leased to Carrier under a lease having a duration of more than thirty (30) days, operating under Carrier's operating authorities; (iii) except to the extent that Carrier uses the services of "owner-operators" in the course of conducting its regular operations, Carrier shall not, in any manner, sub-contract, broker or tender to any third party for transportation any freight tendered to Carrier by TSG for transportation pursuant to this Contract; (vi) while Carrier may also hold authority from the FHWA to operate as a motor common carrier, no transportation will be performed by it for or on behalf of TSG and/or TSG's Customers as a motor common carrier; (v) Carrier's rates and tariffs as a motor common carrier shall not, except as may be specifically provided in this Contract, be applicable to any transportation which it shall perform for and on behalf of TSG; and (vi) Carrier will at all times have a U.S. Department of Transportation safety rating that is satisfactory, and that at no time will it allow its safety rating to become unsatisfactory.

4.2     In providing services, Carrier represents and warrants that the driver(s) utilized are competent and properly licensed, and are fully informed of their responsibilities for the protection and care of the involved commodities. Carrier agrees that neither TSG nor its Customers are responsible for paying the involved driver's salary, wages, compensation or charges, nor are either responsible for workman's compensation coverage or any taxes based on salary, wages or compensation. Carrier agrees to provide and maintain the necessary equipment and to provide all fuel and pay all expenses necessary to operate the equipment, and Carrier agrees that in no instance shall TSG or its Customers be responsible for any of the expenses. Carrier represents that the transportation will be performed without violating local, state or federal laws or regulations, and that Carrier has complied and will comply with all laws and regulations of local, state and federal authorities and regulatory bodies having jurisdiction over the operation of its vehicles. Carrier further warrants that all motor vehicle equipment provided by Carrier for the transportation of food grade

INITIAL

x _R.G._

4

products will comply with the requirements of The Sanitary Food Transportation Act, and that none of the equipment provided for the transportation of food or food grade products has been or will be used for the transportation of any waste of any kind, garbage, hazardous materials or any other commodity that might adulterate or contaminate food, food products or cosmetics.

4.3    At the time each shipment is received by Carrier from TSG's Customer(s), Carrier will request and obtain instructions concerning all handling, securing and product or freight protection requirements of each shipment, including specifications noted on the bill of lading or otherwise. Carrier is responsible for insuring that all freight is properly blocked and braced for transportation unless tendered to Carrier in a pre-loaded, sealed trailer, and Carrier is instructed not to break the seal(s) on the trailer, which fact must be noted on the bill of lading. Carrier is responsible to determine that the goods being shipped are in apparent good order and condition, to the extent that such is ascertainable through a visual examination of the exterior of the goods shipped, before loading and, in the event that they are not, Carrier will contact TSG for further instructions.

## SECTION 5

## TSG'S COMPENSATION

5.1    In consideration for performing services and its guarantee of payment, TSG is hereby authorized and empowered to keep any amounts over the contract rates stated in this Contract or Confirmations as its broker's commission and TSG shall not be required to disclose the amount of its commission.

## SECTION 6

## INDEPENDENT CONTRACTOR

6.1    The Parties understand and agree that the relationship of Carrier to TSG hereunder is solely that of an independent contractor, and that Carrier shall and does employ, retain or lease on its own behalf all persons operating motor vehicles transporting commodities under this Contract, and such persons are not employees or agents of TSG or its Customers. It is further understood and agreed that all drivers of motor vehicles and persons employed in connection with the transportation of commodities under this Contract are subject to the direction, control and supervision of Carrier, and not of TSG or its Customers. Carrier represents and agrees that such employees are and will at all times be covered by adequate workmen's compensation insurance as provided by law.

## SECTION 7

## CARRIER'S CARGO LIABILITY

7.1    Carrier agrees to transport the commodities to the specified destination with reasonable dispatch (defined as the length of time that it would customarily and ordinarily take to transport a like shipment), unless a specified delivery date and/or time is communicated to Carrier prior to the pick-up of any individual shipment. Carrier hereby assumes all liability for cargo loss and damage while such commodities are in Carrier's custody or control, except for loss, damage, injury

INITIAL

x _R.G._

5

or delay to the commodities caused by act of God, public enemy, authority of law, act or default of the shipper or owner or for natural shrinkage; and Carrier has the burden of proving that cargo loss, damage, injury or delay was caused by one of the above exceptions. No released value conditions, whether stated in the rates or otherwise, shall apply against TSG or its Customers. In the event branded or labeled goods are damaged, TSG's Customer may determine, within its sole discretion, and subject to a reasonableness standard, whether the goods may be salvaged, and if salvageable, the value of such salvage. Any salvage receipts shall be credited against TSG's Customers' claims against Carrier. TSG's Customers shall have the right to remove all identifying marks or labels when Carrier pays TSG or TSG's Customers for the full value of the damaged goods and requests possession of the goods for salvage. Alternatively, in the discretion of TSG or its Customers, the goods shall be permanently marked as "damaged" or a similar notation, without debiting or otherwise charging TSG's Customers on account of such notations.

## SECTION 8

### INSURANCE

8.1    Carrier agrees to procure and maintain for the benefit of TSG and its Customers, at Carrier's own expense, and to provide written proof of, all insurance coverage required by the U.S. Department of Transportation or the States in which services are to be performed, including appropriate insurance forms and adequate insurance covering cargo damage, public liability, bodily injury/property damage, and workmen's compensation, all in the form and amounts required by TSG.

## SECTION 9

### CARRIER'S INDEMNIFICATION

9.1    The Parties agree that Carrier shall be the party solely responsible for operating the equipment necessary to transport commodities under this Contract. Carrier therefore agrees to indemnify TSG and its Customers and to hold them harmless for: loss or damage to Carrier's equipment; loss resulting from injury, including death, sustained by any employee of Carrier, or by any other person while acting in the capacity of a driver or helper in connection with the operation of the equipment; for any bodily injury, property damage or cargo loss, including the defense of any lawsuits there from, arising out of the operation, maintenance or use by Carrier of motor vehicle equipment to perform services under this Contract; for damage sustained by TSG or its Customers arising out of the furnishing by Carrier of equipment which has been used to haul waste or is otherwise not suitable for hauling food products or which may affect the safety or cleanliness of food products hauled by Carrier; and for any loss or damages sustained by TSG as a result of any other violation of this Contract by Carrier, including loss or damages due to the negligence, incompetence or dishonesty of Carrier or Carrier's agents or employees; provided, however, that this paragraph shall not apply to any penalty or liability arising solely as a consequence of any wrongful or negligent acts, omissions, or violations by the TSG, its Customers, agents or employees.

## SECTION 10

INITIAL

x  R.G.

6

## BILLS OF LADING AND DELIVERY RECEIPTS

10.1    Carrier will issue and sign a standard, uniform straight bill of lading or other receipt acceptable to TSG and TSG's Customers upon acceptance of goods for transportation. All terms or conditions written or printed on the receipts or bills of lading which have not been specifically agreed to by TSG, either in this Contract or on any addenda hereto, shall have no binding effect against TSG. The receipt or bill of lading issued or executed by Carrier shall be prima-facie evidence of receipt of goods in good order and condition by Carrier unless otherwise noted on the face of said document. Carrier shall submit to TSG the original signed bill of lading evidencing good delivery of the goods, unless otherwise specifically agreed by TSG; and in that case, Carrier shall maintain custody of the original signed bills of lading and will provide them to TSG upon request. If Carrier fails to maintain and provide the bills of lading as agreed, Carrier assumes all risk of loss resulting from the failure to prove good delivery. In the event that Carriers personnel are not allowed or afforded an opportunity to view and/or examine the goods in order to ascertain the condition of those goods prior to loading on to Carrier's vehicle, Carrier's personnel shall immediately notify TSG and await instructions prior to transporting the shipment, and shall note on the bill of lading that they were not allowed or afforded an opportunity to view and/or examine the goods shipped.

## SECTION 11

## FACTORING

11.1    Carrier shall provide TSG written notice of any assignment, factoring, or other transfer of its right to receive payments arising under this Contract thirty (30) days prior to such assignment, factoring, or other transfer taking legal effect. Such written notice shall include the name and address of assignee/transferee, date, date assignment is to begin, and terms of the assignment, and shall be considered delivered upon receipt of such written notice by TSG. Carrier shall be allowed to have only one assignment, factoring or transfer legally effective at any one point in time, and no multiple assignments, factoring or transfers by the Carrier shall be permitted. Carrier shall indemnify TSG against and hold TSG harmless from any and all lawsuits, claims, actions, damages (including reasonable attorneys fees, obligations, liabilities and liens) arising or imposed in connection with, the assignment or transfer of any account or right arising there under where the Carrier has not complied with the notification assignment requirements of this section. Carrier also releases and waives any right, claim or action against TSG for amount due and owing under this Contract where Carrier has not complied with the notice requirements of this section.

## SECTION 12

## CONTRACT TERM AND TERMINATION

12.1    The initial term of this Contract shall be a period of one (1) year from the date hereof, and shall continue in full force and effect from year-to-year unless it is terminated as provided for herein. Notwithstanding the above, either Party shall have the right to cancel or terminate this contract upon thirty (30) days' prior written notice to the other party.

INITIAL

x _R.G._

7

## SECTION 13

## COMMUNICATIONS AND CONFIDENTIALITY

13.1    Carrier and TSG intend and hereby agree to use the entire variety of communications and information means available, whether available presently or in the future, to communicate agreements, modifications, rates, instructions, equipment and load location, and any other information helpful or necessary to carry out the intentions of the Parties herein. Such communications and information transmission presently includes telephone, telecopier, software, e-mail, internet, electronic funds transfer, satellite, and information received from third parties (including affiliates of TSG, outside billing companies and freight payment entities), but this is not intended to be limiting the manner of future communications as they develop.

13.2    All information furnished to one Party to the other in the course of performing work or rendering services under this Contract shall be deemed to be the confidential and proprietary information of the disclosing Party and/or its Customers. The Party receiving information agrees not to disclose any such information to any third party, nor to use such information other than in performance of work and/or rendering services under this Contract. Carrier agrees not to use TSG or it's Customers' names for promotional or other purposes without prior written consent.

## SECTION 14

## MISCELLANEOUS

The Parties hereby further agree as follows:

14.1    This Contract shall not be rendered unenforceable by virtue of any failure or alleged failure to comply with the provisions of any statute or regulation applicable to transportation contracts, and the parties expressly waive any right that they might otherwise have to challenge the validity of this contract on such grounds, which waiver shall be binding on their respective assigns, heirs, or successors in interest.

14.2    Neither party shall assign this Contract or any rights hereunder without the prior written consent of the other party. This Contract shall be binding upon all permitted assigns, heirs and successors of the respective Parties hereto.

14.3    All notices required to be given under any of the provisions of this Contract shall be properly given if made in writing and deposited in a United States Post Office by registered mail, postage prepaid or if deposited with a recognized overnight carrier service and addressed to the respective parties as set forth above.

14.4    Carrier shall have no lien, and hereby expressly waives its right to any lien on any cargo, freight or other property of TSG or any of its Customers.

INITIAL

x _R. G._

8

**14.5**  This Contract constitutes the entire agreement and understanding between the parties and supersedes any and all prior agreements and understanding, either oral or written. TSG may, from time to time, modify or amend the terms or conditions of this Contract, by means of a written amendment which it shall promptly mail or otherwise transmit to Carrier. Said modification or amendment shall become effective three (3) days after transmission by TSG. Carriers continued acceptance of freight tendered by TSG or TSG's Customers thereafter shall constitute acceptance by Carrier of such modification or amendment of this Contract. In the event that any portion of this Contract is declared void or unenforceable, then such provision shall be deemed severed from this Contract which shall otherwise remain in full force and effect.

**14.6**  This Contract may be executed in one or more counterparts and each of such counterparts shall, for all purposes, be deemed to be an original, but all such counterparts shall together constitute but one and the same instrument.

**14.7**  In the event either party incurs attorney's fees, costs or expenses in enforcing any of the provisions of this Contract, or in exercising any right or remedy arising out of any breach of this Contract by the other party, the prevailing party shall be entitled to an award of attorney's fees, costs and expenses against the defaulting party.

**14.8**  The Parties agree that this Contract shall be construed under the laws of the State of Illinois, and agree that all disputes arising under this Contract may be submitted to the jurisdiction of the State or Federal Courts within the States or Districts of Illinois, or for administrative proceedings to the appropriate Federal or State government agency having jurisdiction over such matters.

INITIAL

x  R. G.

**IN WITNESS WHEREOF**, the parties have caused this Agreement to be executed as of the date and year first written above.

CARRIER:                              TSG:

FAX  TRUCCING, IN        TRANSPORTATION SOLUTIONS GROUP, LLC

By: _____            By: _____
(Must be signed by an officer)


By: __ZUSMVR_____        By: __Ashley Lawson_____
Title: __V. P._____      Title: _Operations Admin Director_
Date: __6-11-07_____      Date: __5/9/07_____

# EXHIBIT 2

## DEPARTMENT OF HIGHWAY SAFETY & MOTOR VEHICLES
## DIVISION OF FLORIDA HIGHWAY PATROL
## STOLEN VEHICLE REPORT

**Case No. FHPG07OFF020438**

The following described vehicle was reported stolen from State Road 9, (i-95), Southbound, south of the rest area on the west shoulder.

On 06/13/2007 Time between 3:45 A.M. and 5:00 A.M.
(ADDRESS)    DATE STOLEN    TIME STOLEN

Model Year 2000  Color White  Make of Vehicle Freightliner  BodyStyle Columbia TT

Tag Number 2007  Fl  F4660C  Serial Number 1FUYSSEB1YLG56507
YEAR   State   NUMBER

Registered Owner's Name Jasmin Hadziabdic
FIRST    MIDDLE    LAST

Address 4548 Bentley Trace Lane N., Jacksonville, Fl. 32257  Phone 904 – 566 – 9521 / 904 – 566 – 9521
BUSINESS    HOME

Person Last Driving Veh. Diosyanis Gonzalez  Address 2505 Paddock Dr. Lot 494, Jacksonville. Fl. 32250

### ADDITIONAL INFORMATION

| KEYS IN IGNITION | DOORS LOCKED | WINDOWS CLOSED | RADIO IN VEHICLE | SPARE TIRE | MILEAGE | MVI STICKER NO. |
|---|---|---|---|---|---|---|
| ☐ YES ☐ NO | ☐ YES ☐ NO | ☐ YES ☐ NO | ☐ YES ☐ NO | ☐ YES ☐ NO | | |

I, Jasmin Hadziabdic , swear or affirm that the above described vehicle was
PERSON MAKING REPORT
stolen at time and location as shown above, and I Will prosecute the offender if apprehended.
WILL/WILL NOT
Witness Corporal Gregory A. Cohn

Scratches, marks or features that will aid in identifying vehicle PAX Trucking on door, USDOT # 1572403

Describe evidence left, witnesses, suspects and summarize details  The driver of the vehicle parked the truck around 2:30 am on the west shoulder of SR 9, (I-95), SB. Around 3:45am – 4:00am, the driver locked the vehicle, took the key and walked to the rest area, approximately ¼ of a mile or more. Around 4:15am – 5:00am, the driver returned to the area the truck was last seen. The driver called 911 at 5:47am to report the truck stolen. I received the call at 5:53am. I gathered all information needed to complete a stolen vehicle report and a incident report. I gave the driver my name, phone number and FHP case number.  All information was given out to other agencies and DOT scales.

Vehicle Entered NCIC & FCIC _____ By _____ Message _____
DATE  TIME  ORIGINATING AUTHORITY  NUMBER

Veh. Insured By Universal Ins  Amount $30,000.00

COMPANY  ADDRESS  VALUE OF VEHICLE

Veh. Lien Held By _____ Amount _____

Report Received By _____ Location _____ Date/Time _____ / _____
SIGNATURE

### RECOVERY INFORMATION

Vehicle Recovered By _____ / _____ At _____
DEPARTMENT  DATE  LOCATION

Arrest Information _____

Vehicle Canceled On NCIC _____ By _____
DATE  TIME  ORIGINATING AUTHORITY

Vehicle Stored At _____

Vehicle Condition _____

Owner Notified By _____ Date/time _____ / _____
Remarks _____

# OFFENSE INCIDENT REPORT

Juvenile    1. Original    **1**
2. Supplement

| Agency ORI Number | Agency Name | | Agency Report Number |
|---|---|---|---|
| FLO- HP05 | | **FLORIDA HIGHWAY PATROL** | FHGP07OFF020438 |

| Reported Day | Date | Time (mil) | Time Dispatched (mil) | Time Arrived (mil) | | Time Completed (mil) |
|---|---|---|---|---|---|---|
| WED | 6/13/2007 | 05:53 | 05:53 | 05:55 | | 08:00 |

| Incident Type | | Incident Day | Date | Time (mil) | Day | Date | Time (mil) |
|---|---|---|---|---|---|---|---|
| 1. Felony  3. Misdemeanor  5. Ordinance  02. Traffic Felony  4. Traffic  9. Other  Misdemeanor | | From WED | 6/13/2007 | 05:53 | To WED | 6/13/2007 | 08:00 |

| Offense | Type | Description | | A-Attempted C-Committed | | Statute Violation Number | NCIC/UCR Code |
|---|---|---|---|---|---|---|---|
| # 1 | 1 | VEH THEFT - GRAND SECOND DEGREE | | C | | 812.014 .2c6 | |

| # | | | A-Attempted C-Committed | | | |
|---|---|---|---|---|---|---|

| Incident Location (Street, Apt. Number) | City | Zip | Geographical Indicator |
|---|---|---|---|
| I - 95 SB .25 MILES SOUTH OF REST AREA, ST. AUGUSTINE | | | I-95 |

| Business Name / Area Identifier | Geographical Area | Forced Entry | Occupancy |
|---|---|---|---|
| .25 MILES S OF MM 302.5 | | 1. N/A  2. No  1. Yes → 1 | 0. N/A  2. Unoccupied 1. Occupied  3. Abandoned → 2 |

**Location Type**
01. Residence-Single   05. Convenience Store   09. Supermarket   13. Bank/Financial Inst.   17. Gov't/Public Bldg.   21. Airport   25. Parking Lot/Garage   29. Motor Vehicle
02. Residence-Complex   06. Gas Station   10. Dept/Discount Store   14. Commercial/Office Bldg   18. School/University   22. Bus/Rail Terminal   26. Highway/Roadway   30. Other Mobile
03. Residence-Other   07. Liquor Sales   11. Specialty Store   15. Industrial/Mfg.   19. Jail/Prison   23. Construction Site   27. Park/Woodlands/Field   99. Other
04. Hotel/Motel   08. Bar/Nightclub   12. Drug Store/Hospital   16. Storage   20. Religious Bldg.   24. Other Structure   28. Lake/Waterway   → 26

| # Offenses | # Victims | # Offenders | # Prem. Ent. | # Veh. Stolen | Type Weapon | | Residence Status | Extent of Injury |
|---|---|---|---|---|---|---|---|---|
| 1 | 2 | 1 | 0 | 1 | 00. N/A  01. Handgun  02. Knife/Cutting  03. Rifle  04. Firearm  05. Other Firearm  06. Blunt Object | 06. Knife/Cutting  07. Hands/Fists/Feet  08. Poison  09. Explosives | 10. Drugs  11. Threat Intimidation  12. Simulated Weapon  99. Other | 00 |

**CODES**

| V/W Code | | Victim Type | Race | Sex | Residence Type | Residence Status | Extent of Injury |
|---|---|---|---|---|---|---|---|
| V-Victim   P-Proprietor<br>W-Witness   Z-Other<br>C-Reporting Person | | 0. N/A<br>1. Juvenile<br>2. L.E. Officer<br>3. Other | N-N/A<br>W- White<br>B- Black<br>4. Other | I- American Indian<br>O- Oriental/Asian<br>U- Unknown | N-N/A<br>M- Male<br>F- Female<br>U- Unknown | 0. N/A<br>1. City<br>2. County | 1. Florida<br>4. Out-of-State | 1. Full Time<br>2. Part Time<br>3. Non-Resident | 0. None<br>1. Minor<br>2. Serious<br>3. Fatal |

| | | | Type Weapon | Victim Relationship To Offender | | |
|---|---|---|---|---|---|---|
| 00. N/A<br>01. Gunshot<br>02. Stabbed | 03. Laceration<br>04. Unconscious<br>05. Poss. Broken Bones | 07. Loss of Teeth<br>08. Burns<br>09. Abrasions/Bruises | 10. Knife/Cutting<br>11. In-Law<br>12. Other Family<br>13. Student | 14. Teacher<br>15. Child of Boy/Girl Friend<br>17. Neighbor<br>18. Employer | 21. Employer<br>22. Landlord/Tenant<br>23. Acquaintance | 00. Other Known |

| Offense Indicator | V/W Code | V. Type | Name (Last, First, Middle or Business) | | Residence Phone |
|---|---|---|---|---|---|
| 1. #1  3. Both<br>2. #2 | 1 | V  3 | GONZALEZ, DIOSVANIS | | |

| Address (Street, Apt. Number) | City | State Zip | Business Phone |
|---|---|---|---|
| 2505 PADDOCK DRIVE 494, JACKSONVILLE FL 32250 | | | |

| Other Contact Info. (Time Available, Interpreter, etc.) | Synopsis of Involvement |
|---|---|
| | |

| If Victim Type 1, 2, or 3 | Race | Sex | Date of Birth or Age | Res. Type | Res. Status | Extent of Injury | Injury Type | Relationship | Ethnicity |
|---|---|---|---|---|---|---|---|---|---|
| | H | M | 2/1/1977  30 | 3 | 1 | 0 | 00 | 02 | |

| Offense Indicator | V/W Code | # | V. Type | Name (Last, First, Middle or Business) | | Residence Phone |
|---|---|---|---|---|---|---|
| 1. #1  3. Both<br>2. #2 | | | | | | |

| Address (Street, Apt. Number) | City | State Zip | Business Phone |
|---|---|---|---|
| | | | |

| Other Contact Info. (Time Available, Interpreter, etc.) | Synopsis of Involvement |
|---|---|
| | |

| If Victim Type 1, 2, or 3 | Race | Sex | Date of Birth or Age | Res. Type | Res. Status | Extent of Injury | Injury Type | Relationship | Ethnicity |
|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | |

| Offense Indicator | Suspect Code | Code | Juvenile | Name (Last, First, Middle or Business) |
|---|---|---|---|---|
| 1. #1  3. Both<br>2. #2 | S-Suspect  E-Escapee<br>Z-Other | | | |

| Maiden Name | Nickname/ Street Name | | Place of Birth | Residence Phone |
|---|---|---|---|---|
| | | | | |

| Last Known Address (Street, Apt. Number) | City | State Zip | Business Phone |
|---|---|---|---|
| | | | |

| Occupation | Employer/School, Address | Social Security Number |
|---|---|---|
| | | |

| Driver's License State/Number | Immigration and Naturalization Number | Other ID. Number | OBTS Number (Arrested) | FCIC/NCIC |
|---|---|---|---|---|
| | | | | |

| Clothing (Describe) | Scars/Marks/Tattoos (Location/Describe) |
|---|---|
| | |

| Race | Sex | Date of Birth or Age | Height | Weight | Eye Color | Hair Color | Hair Length | Hair Style |
|---|---|---|---|---|---|---|---|---|
| | | | | | | | | |

| Complexion | Build | Facial Hair | Teeth | Speech/Voice | Special Identifiers |
|---|---|---|---|---|---|
| | | | | | |

CAD INCIDENT DISPOSITION CODE: [ ]

THE DRIVER OF THE STOLEN VEHICLE, DIOSVANIS GONZALEZ, (VICTIM 1), HAD PARKED ON STATE ROAD 9, (I-95),

APPROXIMATELY .25 MILES SOUTH OF THE SOUTHEND SOUTHBOUND REST AREA. HE STATED IT WAS AROUND 2:30

A.M. WHEN HE STOPPED TO GET SOME REST. HE ALSO ADVISED THAT AFTER HE WOKE UP, HE EXITED THE VEHICLE,

LOCKED THE DOORS, TOOK THE KEYS AND WALKED TO THE REST AREA. HE ARRIVED AT THE REST AREA AROUND

3:45 - 4:00 A.M. HE LEFT THE REST AREA TO RETURN TO HIS VEHICLE AROUND 4:30 - 5:00 A.M. WHEN HE GOT TO THE

AREA THE VEHICLE WAS PARKED, HE NOTICED IT WAS MISSING. AFTER SEARCHING THE AREA FOR A SHORT TIME, HE

| Report Contains | Related Report Number(s) |
|---|---|
| STOLEN VEHICLE | |

| Officer Reporting | ID. Number(s) | Troop | Date |
|---|---|---|---|
| CORPORAL GREGORY A. COHN | 0893/0594 | G | 6/13/2007 |

| Officer Reviewing (if Applicable) | ID. Number | Routed To | Referred To | Assigned To | By |
|---|---|---|---|---|---|
| | | | | | |

| Case Status | Clearance Type | | Date Cleared | Arrest Number | Number Arrested |
|---|---|---|---|---|---|
| | 1. Arrest  3. Unfounded<br>2. Exceptional | A-Adult<br>J-Juvenile | | | |

| Exception Type | | | | OBTS Number | Page |
|---|---|---|---|---|---|
| 1. Extradition Declined | 2. Arrest on Primary Offense Secondary Offense Without Prosecution | 3. Death of Offender<br>4. V/W Refused to Cooperate | 5. Prosecution Declined<br>6. Juvenile / No Custody | | 1 of 2 |

# NARRATIVE CONTINUATION

| | | 1. Offense **1** | Juvenile | 1. Original **1** |
|---|---|---|---|---|
| | | 2. Arrest | | 2. Supplement |

| Agency ORI Number | Agency Name | FLORIDA HIGHWAY PATROL | Agency Report Number |
|---|---|---|---|
| FLO-FHP05 | | | FHGP07OFF020438 |

| Original Date Reported 6/13/2007 | Case Reference |
|---|---|

RETURNED TO THE REST AREA AND CALLED 911 AROUND 5:47 A.M., AND I RECEIVED THE CALL AT 5:53 A.M. I

GATHERED ALL INFORMATION FROM THE VICTIM ABOUT THE VEHICLE TO COMPLETE MY REPORT.

STOLEN:  2000 FREIGHTLINER COLUMBIA, (TRUCK TRACTOR), WHITE IN COLOR.

TAG NUMBER: F4660C / FLORIDA / 2007.

VIN NUMBER: 1FUYSSEB1YLG56507.

STOLEN:  1996 GREAT DANE, TRAILER, WHITE IN COLOR.

TAG NUMBER: C8894Z / FLORIDA / 2007.

VIN NUMBER: 1GRAA0629TB054504.

THIS INFORMATION WAS GIVEN TO OTHER AGENCIES THROUGHOUT THE STATE OF FLORIDA.

| Report Contains STOLEN VEHICLE | | | Related Report Number(s) | |
|---|---|---|---|---|
| Officer(s) Reporting CORPORAL GREGORY A. COHN | | ID. Number(s) 0893/0594 | Troop G | Date 6/13/2007 |
| Officer Reviewing (If Applicable) | ID. Number | Routed To | Referred To | Assigned To | By | Date |

| Case Studies | Clearance Type 1. Arrest 2. Exceptional | 3. Unfounded | A-Adult J-Juvenile | Date Cleared | Arrest Number | Number Arrested |
|---|---|---|---|---|---|---|
| Exception Type 1. Extradition | 2. Arrest on Primary Offense Secondary Offense | 3. Death of Offender 4. VW Refused to | 5. Prosecution Declined 6. Juvenile / No Custody | | OBTS Number | Page 2 of 2 |

# EXHIBIT 3

JUN. 26. 2007 12:29PM PM  MWW Claims Logistics          7049920771 NO. 1886  P. 3 P.1

# MENLO
## WORLDWIDE
Logistics

## STRAIGHT BILL OF LADING  FILE COPY

Carrier: FXLL

| Customer POB | Carrier Pro | Booking No. | Shippers / BOL No. |
|---|---|---|---|
| 001763 | | 6010041554 | A8587 |
| | | | Date: 08/11/07 |

**CONSIGNEE (TO)**

WINN DIXIE ORLANDO        P        7733800009
4401 SEABOARD ROAD
ORLANDO, FL 32808

**SHIPPER (FROM)**

PHOENIX BRANDS CHARLOTTE
9601-A TWIN LAKES PKWY
CHARLOTTE, NC 28269
US

## CONFIRMED

Route:

Trailer Number

**53007**

Required Delivery Date: 6/7/2007

| Number Shipping Units | Kinds of packaging, description of articles, special marks and exceptions | Weight (Subject To Corrections) | Rate | Charges |
|---|---|---|---|---|
| 1304 | Total for BOL | 37883.61 LBS | | |
| 440 | SUNLIGHT - 43019 - LEMON (SNLT LQ 20 18 OZ)PET | 12,782.66 LBS | 0.00 | 0.00 |
| 864 | SUNLIGHT - 43419 - Green Apple (SNLT LQ STD APP 20 18 OZ) | 25,100.93 LBS | 0.00 | 0.00 |
| | | .00 LBS | 0.00 | 0.00 |
| | 22 - Chep Pallets | | | |

**Special Instructions:**
EDI CONTROL #: 000010435   SHIPMENT OF THIS ORDER IS  ACCEPTANCE OF THE NE   PAYMENT OBLIGATION WILL  BEGIN UPON RECEIPT OF  NOTIFY BUYER IF UNABLE TO  SHIP OR CHANGE IN QT  SHOW P.O. NO. ON BOL AND  INVOICE. SHIP AS ORDE DELIVERY BY APPT. ONLY.  CALL RECV. DEPT. IN AD

Remit to:  PHOENIX BRANDS
C/O MENLO WORLDWIDE LOGISTICS
PO BOX 5158
PORTLAND OR 97208

COD FEE TO BE PAID BY

☐ Shipper    ☐ Consignee

| | |
|---|---|
| TOTAL | .00 |
| COD AMOUNT | .00 |
| COD FEE | .00 |

Note - Where the rate is dependent on the value, shippers require to state specifically in writing the agreed or declared value of the property.

The agreed or declared value of the property is hereby specifically stated by the shipper to be not exceeding

$ _____ By _____

Subject to Section 7 of the conditions, if this shipment is to be delivered to the consignee without recourse on the consignor, the consignor shall sign the following statement.

The Carrier shall not make delivery of this shipment without payment of freight and all other lawful charges.

_____
(Signature of Consignor)

**TOTAL CHARGES**

**FREIGHT CHARGES:**

Freight prepaid except when box at right is checked

☐ Check box if charges are to be collect

RECEIVED, subject to the classifications and lawfully filed tariffs in effect on the date of the issue of this Bill of Lading, the property described above is apparent good order, except as noted (contents and condition of contents of packages unknown), marked, consigned, and destined as indicated above which said carrier (the would carrier being understood throughout this contract as meaning any person or corporation in possession of the property under the contract) agrees to carry to its usual place of delivery at said destination, if on its route, otherwise to deliver to another carrier on the route to said destination. It is mutually agreed as to each carrier of all or any of said property over all or any portion of said route to destination and as to each party at any time interested in all or any said property, that every service to be performed hereunder shall be subject to the bill of lading terms and conditions in the governing classification on the date of shipment.
Shipper hereby certifies that he is familiar with all the bill of lading terms and conditions in the governing classification and the said terms and conditions are hereby agreed to by the shipper and accepted for himself and his assigns.

| Shipper PHOENIX BRANDS CHARLOTTE | Carrier FXLL | Seal No. 0YT4379 |
|---|---|---|
| Per _____ | Per _____ | Date 6/12/07 |

# EXHIBIT 4

JUN. 26. 2007 12:28PM    MWW Claims                                NO. 1886    P. 1



# MENLO
## WORLDWIDE

Page 1 of 1

---

## CLAIMS INVOICE FOR ML 794180 -20

| | | | |
|---|---|---|---|
| **Date:** | June 26, 2007 | **Reference # :** | ML 794180 -20 |
| **Invoice To:** | Freight Exchange of North America<br>400 North Noble St Suite 210<br>Chicago, IL 60622<br>312-698-9209 | **Please remit to:** | Menlo Worldwide Claims<br>P.O. Box 2688<br>Portland, OR 97208-2688<br>Attn: Richard Oakman, CCP |
| **ATTN:** | CARGO CLAIMS DEPARTMENT | | |

The attached claim for $25,297.60 is made against your company for Theft suffered by our customer, Phoenix Brands, in connection with the below detailed shipment. According to the contractual terms between Menlo Worldwide Logistics and Freight Exchange of North America, this claim must be concluded within 45 days of filing by Menlo. Please contact me should you have any questions regarding this claim.

| | | | |
|---|---|---|---|
| **Customer Ref #** | | **Pro/BOL Date:** | 6/19/2007 |
| **Pro/BOL #:** | A6387 | **Claim Type:** | Theft |
| **Customer Ship #:** | | **Customer Name:** | Phoenix Brands |
| **Carrier Name:** | Freight Exchange of North Americ | **Customer Order #:** | A6387 |
| **Shipper:** | Phoenix Brands<br>Charlotte, NC | **Consignee:** | Winn Dixie<br>Orlando, FL. |

### Detailed Description of Product Claimed

| Quantity | Type | Product | Weight | Cost Per | Salv Allowance | Line Total |
|---|---|---|---|---|---|---|
| 440 | FV | 43019 Sunlite 19 oz Lqd lemon - | 0 | $19.40000 | $0.00 | $8,536.00 |
| 864 | FV | 43419 Sunlite 19 oz Lqd Green Apple - | 0 | $19.40000 | $0.00 | $16,761.60 |

| | | |
|---|---|---|
| Total Cost | | $25,297.60 |
| Total Salvage Allowance | | $0.00 |
| **Total Claim Amount** | | **$25,297.60** |

The foregoing statement of facts is hereby certified to be correct by the undersigned. Should you need additional information or have questions, please do not hesitate to contact me. Thank you.

| | |
|---|---|
| **Examiner:** Richard Oakman, CCP<br>Menlo Worldwide Claims<br>Phn: (503) 450-2495<br>Fax: (503) 450-2388<br>oakman.richard@con-way.com | **Signed:** *Richard Oakman*<br><br>**Date:** 6/26/2007 |

# EXHIBIT 5



Transportation Solutions Group, LLC

## CLAIM FORM

| | |
|---|---|
| Claimant Company Name | Date: 06/26/07 |
| Transportation Solutions Group, LLC | |

| Carrier: | Pax Truxking, Inc. |
|---|---|
| Carriers Invoice/BOL Number: | n/a |

**Claimant Company Name**

Transportation Solutions Group, LLC

**Contact Name**

Ashley Larson

**Address**

400 N. Noble, Suite 210

| City | State | Zip |
|---|---|---|
| Chicago | IL | 60622 |

| Phone Number: | Fax Number: |
|---|---|
| ( 312 ) 698-8109 | (312) 698-9209 |

**Claimant's Reference Number:**

ML794180-20

**Method of Settlement:**

Please check one of the following payment methods:

☐ 1) Payment made by separate check

☐ 2) Payment made by deduction from carrier invoice.

| TSG Load # / Invoice # | Shipment Date | B/L Number |
|---|---|---|
| 91556-C | 06/12/07 | 2201062 |

| Shipper | Consignee |
|---|---|
| **Company Name** | **Company Name** |
| Menlo Worldwide | Winn Dixie |
| **Address** | **Address** |
| 9801 A Twins Lake | 4401 Seaboard Rd. |

| City | State | Zip | City | State | Zip |
|---|---|---|---|---|---|
| Charlotte | NC | 28269 | Orlando | FL | 32808 |

| Quantity | TYPE OI/S/D | Description of Product/Claim | - | Claim Amount |
|---|---|---|---|---|
| Entire load | Short | Trailer Stolen – Product Missing | | |
| 440 Cases | Short | Sunlite 19oz Lqd Lemon - #43019 | $19.40/Case | $8,536.00 |
| 864 Cases | Short | Sunlite 19oz Lqd Green Apple - # 43419 | $19.40/Case | $16,761.60 |
| | | | | |
| | | | | |
| | | | **Total** | $25,297.60 |

The claimant certifies and acknowledges the foregoing information to be accurate and correct. Further information will be made available to you, the carrier, upon request.

Please sign below as acknowledgement of this claim and fax back to (312) 698-9209

_____          _____

Authorized Signature Representing Carrier                                    Date

400 N. Noble * Suite 210 * Chicago, IL. 60622 * Phone (312) 738-5500 * Fax (312) 738-8966